NEW-YORK.
May, 1805.

J Brandt ex
dem. H. Wal-
ton & others
v.
Obadiah Ogden
and
David Ogden

## James Brandt ex dem, Henry Walton and others, *against* Obadiah Ogden, and David Ogden.

EJECTMENT for lands in *Washington County*. The premises were claimed by the plaintiff, under the *Kayaderosseras Patent* as being a part of No. 10 in the 25th allotment. The defendant rested his title on the *Queensbury Patent*. The words in the *Kayaderosseras Patent*, so far as respects, the controversy, were, " from the " head of the *Kayaderosseras* thence *eight miles more northerly* "thence easterly or northeasterly to the *third Falls* of the *Albany* " river about twenty miles *more or less*." On the present trial it was conceded, that the " eight miles more northerly from the head of the " *Kayaderosseras*," had been established by a former decision of this court, to run eight miles *due north* from the head of the Creek. A verdict having been found for the plaintiff, the case now came before the Court on an application for a new trial, as being against the weight of evidence. The only question was, where the closing line of the *Kayaderosseras patent* was to terminate ? The plaintiff insisted that *Baker's Falls* were the concluding point ; the defendant, that it ended at those of *Fort Miller*. The grounds on which each side contended, are set forth in the opinions of the court ; and as the discussion was merely as to courses and distances, the arguments of counsel would be unintelligible without maps, and are therefore, as involving no one principle of law, and affording no precedent in any other case, unnecessary to be detailed.

Fort Miller
falls are the
third falls men-
tioned in the
*Kayaderosseras
patent* and the
map of the com-
missioners of
that patent,
made in 1770—
&c. not correct.

TOMPKINS, J. The material facts upon which the plaintiffs relied to establish their construction of the patent were, 1st. That the survey of the *Kayaderosseras Patent*, made by the commissioners who subdivided it in 1771, adopted *Baker's* falls as the third falls.

2d. That the survey of *Cockburn*, the deputy surveyor general, who surveyed the patent, also terminated at *Baker's* falls.

NEW-YORK.
May, 1805.

J. Brandt ex
dem H. Walton
and others

v.

O. & D. Ogden.

3d. That several of the allotments in the *Kayaderosseras patent,* lying without the line contended for by the defendants, have been settled uninterruptedly under that patent.

4th. That *Baker's* falls are marked on the aforesaid surveys as the third falls; and that *Seth C. Baldwin* testified that they had been reputed the third falls by people in the vicinity of them during his acquaintance there, which extended to the last *seventeen* years.

With respect to the survey of the commissioners, I would remark, that it cannot be of much avail to the plaintiffs, since it was made by persons selected by the proprietors of *Kayaderosse-.ras* for the purpose, and whose disposition in locating the patent, must obviously have been favorable to the interest of their employers. This is confirmed by the fact of their having embraced in their plan of the patent, much land not included in the survey of *Cockburn.* Their survey, as well as that of *Cockburn,* which the commissioners believed to be incorrect, can therefore be of little importance, any further than they comport with the rights of the Patentees, derived from the patent itself.

Neither can the settlements of other allotments, not embraced by a line running to *Fort Miller* falls, give much aid to the pretensions of the plaintiff, since the lands in question have been settled under the *Queensbury patent,* which confessedly includes them. The direction of the closing line will vary from that given in the patent, if it terminate at either of the falls; neither will the distance in either case, exactly conform to twenty miles. The words, as to the distance however, are sufficiently broad to extend to either of those falls, without violation to the patent.

To rebut the conclusion favorable to the plaintiff's title, deducible from the preceeding facts, the defendants shewed, that the premises in question were embraced in the patent of *Queensbury,* and were settled and held under that patent. They also proved, by *five* witnesses, that they had been acquainted with *Fort Miller* falls, for about forty years past, and that those falls were not only during that period generally known and reputed to be the third falls, but that they were so in point of fact.

It is a little remarkable that not a particle of testimony was afforded on the part of the plaintiff, to disprove the latter fact, which appears almost conclusive on the question; neither is there any contradiction of the reputation of forty years, or the knowledge of the defendants' witnesses in regard to *Fort Miller* falls, unless it arise from the testimony of *Baldwin.* Supposing his testi-

NEW-YORK.
May, 1805.

J.   Brandt ex
dem H. Walton
and others
v.
O. & D. Ogden.

mony to have been admissible, he is interested in the lands affect-ed by the disputed line, and if he were not, a reputation of seven-teen years only, in the vicinity too of *Baker's Falls*, a reputation commencing since disputes have originated about the line, and since it became the interest of the *Kayderosseras patent* proprietors to excite and establish such an opinion, can have but little weight when contrasted with the testimony of the defendants' witnesses. They prove that *Fort Miller Falls* have been called and reputed the third falls, from as early a date as the period of the survey of the *Kayaderosseras patent* ; and establish the further undisput-ed truth, that they are in point of fact the third falls.   The ques-tion as to the termination of the concluding line of the patent* must be settled by a construction of the patent.   The evidence on the part of the defendant is decisive to fix its termination at *Fort Miller* Falls, and not at *Baker's* falls, as the jury have de-termined.

I think therefore the verdict for the plaintiff was against the weight of evidence, and ought to be set aside.

SPENCER, J.   Both of the parties claiming by title derived from the government, their pretensions offer a case of strict construction ; their acts, unless as against themselves, can be no further noticed than they shall be found conformable to their rights.   The partition by the commissioners, who were nomi-nated by the party interested, cannot prejudice the rights of others. They had no right to hear and determine, but must be viewed as subservient to the interests and wishes of the proprietors.   These lines therefore deserve little consideration, unless conformable to the right of the case.   In the present instance we are to intend the defendants became the first possessors under the opposing patent, and thus the only inquiry is, whether the boundaries of the *Kayaderosseras patent*, which is the senior patent, includes the land in controversy?

If the closing line of this patent be run to the falls, set up by the defendant as the third falls of the *Albany* river, the premises are excluded.   By the case agreed on, between the parties, this line is to be run from the termination of the eighth mile run due north, it is therefore unnecessary to examine whether that line was correctly run or not, as the court cannot but regard the agree-ment of the parties binding in that respect.   There appear to have been five witnesses examined by the defendants, to establish the *Fort Miller Falls*, to be the third falls in the *Albany River*.   These witnesses testify, that they had known these falls as the third falls,

for more than forty years ; they state the *Stillwater falls* to be the
first, *Saratoga* the second, and the *Fort Miller* the third falls. The
only proof opposed to this, is the map of the commissioners, and
the testimony of *Seth C. Baldwin*, who testified that *Baker's falls*,
to the northward of *Fort Miller*, were the third falls, and that a
rock there was marked as such, but when or by whom does not
appear. He says too, that *Baker's* falls, as laid down on the com-
missioners' map, had been, by reputation for seventeen years past,
the third falls ; that such was the general sense of the people
in that vicinity, and that certain lots, depending on that construc-
tion have been settled and held under the *Kayaderosseras* patent.
I have said, and repeat it, that the line run by the commissioners,
or the falls adopted by them as the third falls, cannot conclude the
rights of persons claiming under other patents. It is true that the
outlines of this patent were run by the deputy of the surveyor
general, but so uncertain were the commissioners as to the cor-
rectness of some of their lines, that part of the lands were marked,
and drawn as disputed lands. The same observation may be
made with respect to the running of lines by the deputy surveyor,
as was made with respect to the commissioners, that the claimants
under other patents could not be affected by such running of lines.

The only question before the jury was, which were the falls in-
tended by government, when the *Kayaderosseras* patent was granted?
To illustrate this, there are five witnesses on the part of the defen-
dants speaking from a knowledge, acquired more than forty
years ago, and thus going back to a time antecedent to the parti-
tion. They assign too the most natural and obvious reasons for
asserting the fact, by presenting to the jury an enumeration of
the other falls on the river. Opposed to their testimonies, is the
single evidence of *Mr. Baldwin*, who appears from the case, to
be interested in lands affected by the running of this line. In ad-
dition to this, his knowledge of the fact in controversy has been
acquired within seventeen years. The sense of the neighbour-
hood, spoken of by *Mr. Baldwin*, is entitled to no weight. Opin-
ions of this kind may be well or ill founded. The evidence it-
self derived from these opinions, was illegal, and therefore deserv-
ed no consideration from the jury or the court. The settlement
of lots under the *Kayaderosseras* patent depending on the construc-
tion now set up by the plaintiff, will not aid the cause ; for it does
not appear that these settlements are ancient. The closing line of
the patent, can derive no support from the terms " easterly," or

NEW-YORK,
May, 1805.

J. Brandt ex
dem H. Walton
and others
v.
O. & D. Ogden.

B

NEW-YORK,
May, 1805.

J. Brandt ex
dem H Walton
and others
v.
O & D. Ogden.

"northeasterly," because in running from the termination of the eight mile line, to either of the falls, the course is some degrees south of east. Nor can the distance of the last line, reflect any light on the dispute; because, on either construction, it is about twenty miles. As an auxiliary consideration, entitled to considerable attention, it is to be noticed, that the line contended for by the plaintiff, will twice cross *Hudson's River*, and yet the patent makes no mention of an incident so singular. There must have been, in all probability, a survey preceding the patent, and it is incredible that the surveyor should not have noticed twice passing the river, had it happened.

This cause was pressed on the court as involving the quietude of that part of the community. Whatever in this respect may be the result, it appears forcibly to my mind, that the present verdict is against the decided weight of evidence, and in my opinion it ought to be set aside on payment of costs.

LIVINGSTON, J. This verdict is palpably against the weight of evidence.

Whether the falls at *Fort Miller*, were the third falls on the *Albany* river was the only question in issue. To establish the affirmative, four witnesses, wholly uninterested, testified, that they had known them *as such* for more than *forty years*. That the falls at *Still-water* were called the *first*, those at Saratoga the *second*, and those at *Fort Miller* the *third*. Another witness declared, that he had known these several falls since the year 1758, and that those of *Fort Miller* were "at that time, and ever since "had been called and known as the *third* falls."

Opposed to this, is the testimony of a single witness, who, after admitting he had an interest in setting up a different place as the third falls, testified, "that *Baker's* falls were marked as the "*third* falls on a rock; that, as laid down on a certain map, called "the commissioners' map, they were by reputation, as long as he "was acquainted with them, which was *seventeen* years, the *third* "falls, and that such was the general sense of the people living "in the vicinity."

If there were serious contradictions between these witnesses, the jury ought to believe *five*, their characters not being impeached, rather than *one* who had a strong interest in swearing as he did; but if every thing which the last witness declares be true, t is very little at variance with what the others had said. It does not contradict one very important item in their testimony, which is, that in point of fact the *third* falls are at *Fort Miller*. If it be

NEW-YORK,
May, 1805.

J. Brandt ex
dem H. Walton
and others
v.
O. & D. Ogden.

true as they swear, and it is uncontradicted, that there are only two falls below *Fort Miller*, and another at that place, how can a fall, further up the river be the *third* falls ? They also swear that they have known them *as such* for more than *forty* years, while the plaintiffs' witness speaks of a reputation in a certain vicinity of only *seventeen* years ; which, as well as the mark of the rock he speaks of, may have orginated with the owners of the land in the patent of *Kayadcrosseras*.

But the partition of the patent of *Kayaderosseras* is relied on, and it is said that the line run by the commissioners in 1771, it being the duty of the surveyor general to attend, ought, together with the acquiescence of government, to put this question at rest. To this the answer is, that this partition is the act of the parties. The commissioners were appointed by them, and that they had no authority to determine definitively. The whole was therefore an *ex parte* act, from which nothing derogatory to the rights of government can be inferred. Whether the possessions up to this line since 1771, will bar the right of the state, as to lands, not then or yet granted between *Baker's* and *Fort Miller* falls, is a question not now before us, because the premises in question are admitted to be contained within the patent of Queensbury which was issued in 1762, and is, so far, an indication of the sense of government unfriendly to the plaintiffs' pretensions. Nor is there much weight in the observation that this patent is dated several years before the partition in 1771 ; for, there is nothing to shew that government was not as well acquainted with the situation of the third falls, which must have been a place of considerable notoriety, at the former, as at the latter of these periods. As little support can be derived from the circumstance of the line run by *Cockburn*, terminating at *Baker's Falls* ; because this very line is admitted by the plaintiff himself to be very incorrect, and very essentially so in other parts of it.

Still less weight is there in the argument, when applied to these defendants, that certain allotments settled under this partition, have been too long acquiesced in, to be now disturbed. This partition, as to them, was *res inter alios acta*, and the acquiescence spoken of can only affect parties interested, and who therefore had a right, but neglected to interfere. The defendants claim no right to the several allotments which, it is alleged, will be affected by running a line from the termination of the eight mile line, to *Fort Miller*. And, so far from any admission by the pro-

NEW-YORK,
May, 1805.

J. Brandt ex
dem H. Walton
and others
v
O. & D. Ogden

prietors, under the *Queensbury* patent, of the right of the lessors of the plaintiff, or those under whom they claim, to the spot in question, they have, for aught that appears, been in the peaceable possession of it ever since the date of the patent. I have taken no notice of a former decision of this court, settling the mode of running the eight mile line from the head of the *Kayaderosseras* creek, for it is not attempted at present to disturb it. This decision, favorable, as it must be acknowledged to be, to the proprietors under that patent, does not, in my opinion, at all touch the question between these parties.

Upon the whole, as the lands, for which this suit is brought, are admitted to lie in the patent of *Queensbury*, if the falls at *Fort Miller* be the *third* falls intended in the patent of *Kayaderosseras*, I think the evidence to that point was so very strong and conclusive, that the jury were not warranted in finding as they did, and that therefore, a new trial must be had, on payment of costs by the defendants.

THOMPSON J. The course of the eight miles north being conceded, the question made on the trial, and now the subject of litigation was plain, simple, and purely a matter of fact, proper for the determination of a jury. At the circuit, no objection was made to the competency of *Seth C. Baldwin*, a witness on the part of the plaintiff. Any objections therefore which may now be urged on this ground, come too late. His testimony, I think, stands fortified by numerous circumstances, that are at variance with the facts stated by the defendants' witnesses. The verdict cannot be said to have been against evidence ; for there was testimony on both sides ; the one, contradictory to the other. Determining the credibility of witnesses, and weighing the force of circumstances, fall peculiarly within the province of a jury. But I cannot say I think the verdict is against the weight of evidence. It appears that the *Kayaderosseras* patent was laid out and divided among the patentees in the year 1770, by commissioners appointed under an act of the legislature, directing the surveyor general to run the out lines of the patent, six weeks notice having been given of the time and place of the commissioners' meeting, for the purpose, among other things, of affording persons claiming under adjoining patents, an opportunity of objecting to such outlines. These commissioners, and the deputy surveyor general, the agent of the government, who were acting under the sanction of an oath, assumed *Baker's Falls* as the third

falls intended by the grant. It is not reasonable to presume that this was arbitrarily done, without having endeavoured to ascertain the truth. If *Fort Miller* falls were at that time so well known as the *third* falls, as represented by the defendant's witnesses, it is unaccountable why the line was not run there; or at least, if it was matter of dispute, it was expressly made the duty of the commissioners to lay out the lands between the two *falls* as disputed lands. This however, was not done, but they run to, and mark *Baker's Falls* as the third falls. *Cockburn*, the deputy surveyor general, although varying from the commissioners in other respects, and laying down part of the land included in the commissioners' map, as disputed land, yet assumes *Baker's Falls*, as the third falls; and for any thing that appears, the present is the first time this fact has been questioned. All this, in my judgment, is contradictory to, and irreconcileable with the public notoriety spoken of by the defendant's witnesses, that *Fort Miller Falls* were the third falls. It is undoubtedly a sound and correct principle, that, in the location of grants, known and established monuments shall control courses and distances; but where doubts may exist as to the monuments, courses and distances, if not to govern, ought, at least, to be entitled to considerable weight in ascertaining the intention of parties. The course and distance given in the patent, from the place admitted to be the termination of the eight mile line, is easterly, or northeasterly twenty miles, more or less, to the third falls. To *Baker's Falls* is about twenty miles; to *Fort Miller*, would be three miles further. The course to *Baker's Falls*, also corresponds nearer with the course given in the patent. In addition, there is the testimony of *Baldwin* proving a general reputation that *Baker's Falls* were known as the third falls. The settlement and improvement of a very extensive tract of country, lying to the north of *Fort Miller Falls*, under the *Kayaderosseras* patent, recognising the line set up by the plaintiff, is entitled, in my judgment, to great consideration. Six different allotments would be more or less affected, and one entirely excluded by adopting the line set up by the defendants. An alteration under such circumstances would create great confusion and endless litigation. I think it is fairly to be inferred from the facts stated in the case, that the defendants, or those under whom they claim, must have gone into possession knowing of the claim of the *Kayaderosseras* patentees, and this ought to be an answer to all considerations

NEW-YORK,
May, 1805.

of hardship. The line set up by the plaintiff was run by the com-missioners in 1770. This must have been an act of public no-toriety in that part of the country, and it is fair to conclude that there was no actual adverse possession of the premises in question at that time, or we should have heard of it as a defence in the pre-sent action. Besides, the patent under which the defendants claim, was granted in the year 1762, only nine years before the commis-sioners' survey. Although the *Queensbury patent* may cover the premises in question, yet if there be any interference, there can be no doubt, but that the *Kayaderosseras* grant, being the oldest, must be first satisfied.

Upon the whole, there is a concurrence of acts and circumstan-ces detailed in the case tending to establish *Baker's Falls*, as the third falls intended in the patent, which, to my mind, afford a more certain and satisfactory conclusion, than the testimony of-fered on the part of the defendants. The whole matter was fairly submitted to the jury, and I am not prepared to say they have not made the just conclusion. I am therefore of opinion that the defendants take nothing by their motion.

KENT, C. J. I concur in the opinion last given, but as the majority of the court entertain different sentiments on this case, there must be a new trial awarded.