PARTRIDGE *v.* RUSSELL.

(*Supreme Court, General Term, Fifth Department.* October, 1888.)

1. DEEDS—DESCRIPTION—BOUNDARIES—LOCATION—PROVINCE OF COURT AND JURY.
    Where a deed by sufficient description clearly locates the premises conveyed, it is for the court to see that the grant is applied to the subject-matter, in accordance

with the express intention of the parties; but where the location of the premises is doubtful, through uncertain, inconsistent, or conflicting terms of description in the deed, the proper location of the premises becomes a question of fact, to be determined by the jury.

**2. BOUNDARIES—EVIDENCE—DECLARATIONS OF DECEASED OWNERS.**

The declarations of the owner of land concerning its boundaries, made while in the act of pointing them out, and while he was in possession, and before any controversy had arisen as to such boundaries, are, after his decease, admissible as part of the res gestœ.[1]

**3. SAME—EVIDENCE—DOCUMENTARY.**

For the purpose of ascertaining the true boundary line, where the description in the deed is ambiguous or repugnant, a commissioner's order laying out a street, containing a description adopted by the surveyor, may be put in evidence as an item of proof, with all the other evidence, for the purpose of reconciling the repugnant clauses in the description, notwithstanding the order is for some reason invalid.

**4. TRIAL—OBJECTIONS TO EVIDENCE.**

Where a question asked a witness is in itself competent, an objection to it is not sufficient to give the trial court an opportunity to rule upon the competency of the statements contained in the answer. If the adverse party is dissatisfied with the answer, he should move to have it stricken out.

Appeal from circuit court, Erie county.

Action of trespass *qu. cl.* brought by Sylvander B. Partridge against Leander Russell. Trial to the court, judgment for defendant, and plaintiff appeals.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.

*Hosea S. Heath,* for appellant.    *W. S. Thrasher,* for respondent.

BARKER, P. J. This action was trespass *quare clausum fregit.* The plaintiff occupies the premises entered as tenant of one Peter Bulger, and in the case the latter is mentioned as the owner. The defendant occupies the lands lying north of those of which the plaintiff is in possession, and the division line runs east and west, and is 2 chains and 42 links in length. The board fence which separated their respective inclosures was torn down by the defendant, and he erected a line of posts, 12 feet to the south, with a view of rebuilding the fence on that line, and this act constitutes the trespass complained of. Both parties claim title to the *locus in quo* by mesne conveyances from John Sherman, the former owner of both parcels, who derived his title by deed directly from the Holland Land Company, in the year 1883. The deed first delivered by Sherman was to Maria Farnsworth, from whom the plaintiff derived title; and if that deed embraces the strip of land in dispute, then the plaintiff made a case for the recovery, and the judgment should be reversed. It becomes necessary to ascertain, as the primary question involved in the controversy, the true location of the starting-point mentioned in the deed from Sherman to Farnsworth, and, when that is determined, the dispute whether or not the plaintiff's landlord has title to the lands where the posts were erected is ended. That deed was executed and delivered on the 8th day of December, 1875, and after giving the range and number of the lot, the description continued, namely: "Bounded as follows: Beginning at the southeast corner of lands owned by John Sherman on the west side, and adjoining the Buffalo and Jamestown R. R. Co.; thence west on the south line of John Sherman's land, and on the north side of E. C. Stancliffe's land two chains; thence north two chains and seventy-five links; thence east, parallel to the south bounds of the land hereby conveyed, two chains and ninety-eight links, or thereabouts, to the west line of said railroad; and thence southerly along said railroad line to the place of beginning." This was the first parcel of land sold and conveyed by Sherman out of his entire tract of 50 acres. At the time Sherman received his deed from the land company, they had conveyed part of lot No. 63 to Jesse Stancliffe, and this parcel was located to the

[1] See note at end of case.

south of the lands conveyed to Sherman. In the deed of the latter the parcel of land conveyed to him is bounded on the "south by land conveyed to Jesse Stancliffe, fifty-three chains and eighty-two links," and in no other way is Sherman's south line referred to, and no proof was given on the trial as to the description contained in the deed to Stancliffe, by which his north line can be located. No reference is made in the deed of the Holland Land Company to Sherman to any natural or artificial monument or object as being located in the south boundary of the land conveyed to him. On the trial both parties gave oral evidence with a view of locating the south line of Sherman's tract, and some of the evidence tended to prove that there had been erected, for a period of more than 20 years prior to the conveyance by Sherman of the Bulger lot, a rail fence between Sherman and Stancliffe, and an actual occupancy by those parties, respectively, of each side of such fence, and that each of them recognized the same as being on the true division line between their lands; and the evidence also tended to show that the line of such fence was in 1875, as well as at the time of the trial, traceable by the old and remaining portions of the fence. The trial court found as a fact that the south line of John Sherman's land was identical with the line of the fence, and that at the intersection of that line with the west line of the railroad was the place of beginning, as mentioned and described in the conveyance by Sherman to Farnsworth, under which the plaintiff claims title. This conclusion, we believe, is well supported by the evidence. There is no evidence that Stancliffe, or those who succeeded to his title, ever occupied any of the land lying north of the rail fence mentioned by the witnesses, and the evidence conclusively establishes that Sherman claimed that his south line was indicated by the same. In all the deeds down to and including the one to Bulger, his lot is described the same as it is in the deed from Sherman.

If a grant by sufficient description of the premises clearly ascertains the location of the premises conveyed, it is for the court to see that the grant is applied to the subject-matter, in accordance with the express intention of the parties. In such a case nothing but a question of law is presented for the court to determine, but whenever the location of the premises is doubtful through uncertain, inconsistent, or conflicting terms of description in the deed, the proper location of the premises becomes a question of fact to be determined by the jury on all the evidence. *Pettit* v. *Shepard*, 32 N. Y. 103; *Green* v. *Collins*, 86 N. Y. 254; *Barclay* v. *Howell's Lessee*, 6 Pet. 499; *Brookman* v. *Kurzman*, 94 N. Y. 276; *Curtis* v. *Aaronson*, 7 Atl. Rep. 886; *Cronk* v. *Wilson*, 40 Hun, 269. The mere reading of the deed in question from John Sherman, together with the deed to him from the Holland Land Company, discloses that the premises claimed by the plaintiff cannot be located without the aid of a surveyor, and a resort to oral evidence. A slight examination of the evidence in the case is sufficient to show the uncertainty in applying this grant to the *locus in quo.* A question of fact was presented, which the trial judge was required to determine. His conclusions on that question, if adhered to, determine as a matter of law that the plaintiff failed to establish a title to the gore of the land in dispute.

The plaintiff took an exception to one of the rulings of the court, in receiving evidence bearing on the question of fact, which may be examined in connection with the point now under consideration. Prior to the delivery of the deed by Sherman of the Bulger lot, he engaged a surveyor to survey and locate the premises, who went onto the ground in company with Mr. Sherman, and they there located the boundaries by which the premises were described. The defendant's counsel asked the surveyor this question: "What did you do, if anything, with reference to ascertaining the line described as the south line of John Sherman's land?" This was objected to by the plaintiff, as immaterial and incompetent, and as tending to contradict the deeds in evidence by proving previous acts and declarations. On the objection being overruled,

the witness stated that Mr. Sherman "took me to what he called his south line, showed me a post in that line, and other monuments. One was the south-east corner of a barn standing upon that line. I went to a certain post in what was shown me as the south line of the lot, and sighted to the west of this, to the south-east corner of the barn that I speak of. I put my transit on this post and sighted to the west of this, to the south-east corner of the barn that I speak of. This post is situated on what is called the 'south-west corner of the Bulger lot.' It was an oak post, four inches square, and standing four feet high, and comparatively new. I sighted to the south-east corner of this barn, to the west, and then reversed the instrument to the east, and set a stake at the railroad line. I then ran north two chains and seventy-five links, which carried me to the north-west corner of the Bulger lot." The witness gave a further and detailed account of the manner in which he located and surveyed this lot. The plaintiff claims that the declaration of Mr. Sherman, that a line which he pointed out to the surveyor as his south line, was incompetent, and should have been excluded. The question itself did not call for any declaration which Mr. Sherman may have made while on the ground directing and aiding the surveyor in locating the premises, and called only for a statement of fact from the witness, which was entirely competent. Before the question was propounded, the witness stated that he acted as surveyor for Mr. Sherman in laying out his village lots, and that Mr. Sherman gave him a description of the Bulger lot, in the form of a contract. As the question was competent, the objection was properly overruled, and if the plaintiff was dissatisfied with the answer which the witness gave, he should have moved to have the same stricken out, and that would have brought the mind of the court directly to the point whether Mr. Sherman's declaration was competent or not. Failing to make that motion, the court had no opportunity to pass upon the competency of the evidence.

We are also inclined to the opinion that it was competent for the defendant to prove that Sherman, while on his own land, engaged in making a survey of the premises which he intended to convey, stated to the surveyor where he claimed his south line to be, as it was at that time the boundary line of his inclosure. The surveyor was in his service, and the declaraction accompanied the act of pointing out the boundary lines, and may be regarded as a part of the *res gestæ.* It was certainly competent to prove the fact that Sherman, before making the conveyance of the lands which he sold, went upon the premises, and located a boundary line, and, when done with the aid of a surveyor, the mode and manner of making it could not thereafter be proved fully and independently, without also proving the things done and said by Sherman, connected with the making of the survey, as he died before the trial. The declarations of deceased persons respecting boundaries are received as competent evidence, and are an exception to the rule which rejects hearsay testimony; but to bring the case within the rule of the exception it must appear that such declarations were made by deceased persons, while in possession of lands owned by them, and in the act of pointing out their boundaries, with respect to such boundaries, and when nothing appears to show an interest to deceive or misrepresent. At the time the survey was made there was no controversy between Sherman and the parties in the possession of the premises on the south of the line indicated. The point indicated by the declaration was on the line of Sherman's inclosure, and nothing is indicated that he had any interest to deceive or misrepresent the location of the true boundary line. *Daggett* v. *Shaw,* 5 Metc. 223; *Long* v. *Colton,* 116 Mass. 414; *Curtis* v. *Aaronson,* 7 Atl. Rep. 886; *Bartlett* v. *Emerson,* 7 Gray, 174.

Subsequent to the conveyance of the Bulger lot, and several years before the removal of the fence, a person in charge of the premises for the owner erected the same, and thereafter it was constituted a division fence. As the plaintiff was in the actual possession of the *locus in quo* when the fence was

removed, it was necessary for the defendant to prove some right to make the entry in support of the judgment in his favor, although the plaintiff failed to prove title in himself. A person in the actual occupancy of land is protected by the law in the enjoyments of his possession against mere intruders, who make no show of right. This the defendant sought to do on the trial, and it was held by the court upon the evidence that the premises conveyed by Sherman to Emerson H. Woodard, under whom the defendant claims title, embrace the land in dispute. In that deed the premises are described as beginning "at the south-east corner of land heretofore deeded by the said first party [John Sherman] to Phœbe Wilson; thence east on the north line of lands deeded to William Farnsworth, two chains and forty-two links, to the railroad survey." The Wilson lot was deeded in May, 1879, and the defendant received his deed in 1883. On the map of the village lots made by Sherman, which is printed in the case, the south-east corner of the Wilson lot is in the north line of the Bulger lot, as that line was established by the court in its decision.

On the trial, the plaintiff contended that the defendant had failed to show any title to the land in dispute, and gave some evidence which tended to prove that the south-east corner of the Wilson lot, the starting-point mentioned in the Wilson deed, was at least as far north as the line of the fence removed by the defendant. By referring to the Wilson deed, it is found that the premises are located by commencing at a point in Elm street, 4 chains and 70 links south of the center of Sherman avenue, which street had been laid out and used by the public for the period of 12 or 15 years. Evidence was produced by both parties, for the purpose of ascertaining the center line of Sherman avenue, and the records in the town clerk's office were produced, which show that the street was opened in 1873, by an order made by the highway commissioners, which was duly recorded. In 1874 another order was made by the highway commissioners then in office, laying out Sherman avenue substantially on the same line, which was also filed in the clerk's office, but not recorded until after the commencement of this action. The plaintiff objected to the admission of this order upon the ground, among others, that the paper does not show on its face that the commissioners had jurisdiction to make it, and that there was no proof of the application, and other papers on which the order was made were filed, as the statute requires, within 30 days; and also, further, that there is no proof of any recording of the order. The objections were overruled, and the defendant excepted, and the order read in evidence. This the plaintiff contends was error, but we think it was properly received, for the reason that it was competent to prove the fact that such an order had been made, and filed in the town clerk's office. If the plaintiff's position is correct as to the true location of the south-east corner of the Wilson lot, then the starting-point given in the deed is repugnant to the first course in the deed, and one or the other must have been inserted in that deed by mistake, for the course from the starting-point to the railroad is east, on the north line of the Bulger lot. It was competent to ascertain the center line of Sherman avenue, with a view of ascertaining the true location of the Wilson lot; and in view of the repugnancy in the description, which had been referred to, it was competent to prove by parol evidence, if such was the fact, that the surveyor in locating the Wilson lot commenced at some other point in Sherman avenue than the center line, as indicated by the first survey; and, as bearing on that question, the second order was properly received in evidence, as the plaintiff might have shown that the surveyor adopted the description contained in that order, in making his survey. Boundaries may be proved by every sort of evidence that is admissible to prove any other fact. If it was a good and valid order, then it was properly received. If it was not, it could only be used as an item of proof in connection with all the other evidence, for the purpose of reconciling the repugnant clauses used in the description of the de-

fendant's premises. After the proofs were all given relative to the true location of Sherman avenue, the plaintiff moved to have the evidence relative to the order stricken from the record, which motion the court denied, at the same time remarking that it did not at that time pass upon the question whether the order was valid or not; thus indicating that the record of the order might be used for the purpose of ascertaining the real point in Sherman avenue adopted by the parties in surveying and locating the Wilson lot. From all the proofs we are fully satisfied that the south line of the defendant's lot is the same as the north line of the plaintiff's premises, as established on the trial, which shows title in the defendant to the strip of land in controversy. Several other exceptions were taken on the trial, which we have examined with care, and fail to discover any error. The judgment should be affirmed. All concur.

### NOTE.

BOUNDARIES — EVIDENCE — DECLARATIONS OF DECEDENTS. Declarations of disinterested parties, since deceased, who were in a position to know a boundary line, are admissible, in a controversy about such line, in *Texas.* Tucker v. Smith, 3 S. W. Rep. 671. But it is held in Curtis v. Aaronson, (N. J.) 7 Atl. Rep. 886, that such declarations, to be admissible, must be made by a declarant in possession as owner at the time, and while engaged in pointing out the boundary in controversy. They need not, however, be against his interest. Declarations made by the owner of land to a purchaser at the time of the sale, as to boundary lines, are admissible in evidence against one claiming title under such purchaser. Austin v. Andrews, (Cal.) 16 Pac. Rep. 546. Declarations of a deceased surveyor as to boundaries are admissible in *Pennsylvania.* Clement v. Packer, 8 Sup. Ct. Rep. 907. Declarations of an original owner of land as to a way of necessity designated by him are admissible in a controversy between subsequent grantees. Kripp v. Curtis, (Cal.) 11 Pac. Rep. 879. See, also, as to the admissibility of the original owner's declarations, Lamoreaux v. Meyers, (Wis.) 31 N. W. Rep. 331.