### DONOHUE *v.* WHITNEY.

*(Supreme Court, General Term, Third Department. July 11, 1891.)*

BOUNDARIES—HEARSAY EVIDENCE—ANCIENT MAPS.

    In an action involving the location of the boundary line between the lands of plaintiff and defendant, it appeared that the lands were part of an ancient grant, and were wild, unfenced mountain land. The deeds to the parties referred to the "Livingston line" as the boundary, but neither deed contained sufficient *data* to locate the line. At the time of the conveyance, 30 years before the action was brought, and before any controversy had arisen as to the Livingston line, plaintiff's grantor had a survey and map made of the premises conveyed to plaintiff, and also of an adjoining tract conveyed to one W. The surveyor, since dead, went around plaintiff's parcel, and pointed out to plaintiff the corners and monuments as he (the surveyor) had established or identified them. The map remained in the possession of W. Plaintiff's surveyor testified that he found some of the monuments which the deceased surveyor had established. *Held*, that the map made by the deceased surveyor and the deed to W., and certified copies of older maps of the patent of which the land in question was part, which were on file in the office of the secretary of state, and on which the Livingston line was marked, were admissible, in the absence of better evidence, as indicating common reputation as to the location of the line.

Appeal from circuit court, Ulster county.

Action by James Donohue against Hiram Whitney. From a judgment entered on a verdict for plaintiff, defendant appeals.

Argued before LEARNED, P. J., and LANDON, J.

*Henry Griffith* and *John E. Van Etten,* for appellant. *William Lounsbery,* for respondent.

LANDON, J. The plaintiff recovered a verdict against the defendant for wood and timber which the defendant cut upon the land in dispute in this action. Both parties claim to own it. Their lands adjoin, the "Livingston line" being the boundary between them. The land is wild, rugged and unfenced, and situate upon a mountain side in the town of Shandaken, Ulster county, being part of great lot No. 8 of the Hardenbergh patent, granted in 1708, and subdivided in 1749, great lot No. 8 being again subdivided in 1779, and partitioned among the heirs of Robert R. Livingston. No deed, however, earlier than 1817, was read in evidence. It seems that prior to that date the more southerly part of great lot 8, on the south-westerly side of the Livingston line, was acquired by Lucas Elmendorf, and the more northerly part on the same side of the line by John Duer, and that the land upon the north-easterly side was acquired, in the more southerly part by Peter R. Livingston, and the more northerly part by Alida Livingston. The plaintiff's land is part of the Elmendorf tract, and the defendant's part of the Peter R. Livingston tract. The deeds of neither party contain sufficient *data* to enable a surveyor to go upon the land and locate the Livingston line. He must have recourse to other sources of information in order to do this. The plaintiff read in evidence the deed of his grantor, Russell, to the Wev brothers, made in July, 1856, of another parcel of land in the Elmendorf tract adjoining the plaintiff's lot on the north, and the Livingston line on the east. Russell gave to plaintiff on the same date a contract for plaintiff's parcel, and gave him the deed thereof in 1858. In 1856 Russell procured Brodhead, a surveyor of experience in that region, now dead, to make a survey and map of the two parcels of land sold, or about to be sold,—one to the plaintiff and the other to the Wev brothers. Brodhead made the survey and map, and went around the plaintiff's parcel, and pointed out the corners to him as he had established or identified them. This map has since been in the possession of the surviving Wev brother, who has ever since claimed to

own the land described in his deed, and delineated upon the map. The Wev tract thus deeded and mapped extends for at least two miles and a half along the Livingston line, and the plaintiff's adjoining land is represented upon the map as extending along the line half a mile further. By the aid of this map and the deed of Russell to Wev brothers, and the deed of Russell to the plaintiff, the plaintiff's surveyor testified that he located the Livingston line, and identified it by some of the monuments which he found on the ground as indicated on the map. The defendant objected severally to the deed and map upon the trial, and now urges here, as he did there, that they were inadmissible. Undoubtedly they are *res inter alios*, so far as he is concerned, and they cannot be used to contradict or disparage his title. Such is not their function here. They are used because they seem to afford the best obtainable description of the location of the Livingston line, and thus enable us to understand what the deeds of the parties mean when they employ that line to bound the respective parcels. The map was made before any contention arose, was made by an expert, was intended to delineate the line for three miles of its length, was made 30 years ago, and itself affords the *data* to test to a considerable degree its own accuracy. So far as the defendant is concerned, it is in the nature of hearsay, but hearsay, in the absence of better evidence, is often used to determine boundaries. The theory is that what common fame or reputation declares to be the boundary at the time a deed is made, referring to such boundary, defines the boundary as the deed speaks of it, in the absence of any terms in the deed or chain of title indicating any other meaning. *Brandt* v. *Ogden*, 1 Johns. 156, 3 Caines, 6; *Boardman* v. *Lessees of Reed*, 6 Pet. 326; *Sparhawk* v. *Bullard*, 1 Metc. (Mass.) 98; *Morris* v. *Callanan*, 105 Mass. 129; 1 Phil. Ev. (Cow. & H. and Edw. Notes) 219, 230. The acts and declarations of the surveyor Brodhead, now deceased, pointing out to the plaintiff his corners described in his deed, and indicated on the map, were for the like reason, in the absence of any ground of suspicion, admissible, and also because part of the *res gestæ* of his possession. *Partridge* v. *Russell*, 2 N. Y. Supp. 529. The English cases, which are more strict than our own in this particular, admit hearsay to determine a private boundary when it is identical with a public boundary, as of a hamlet, parish, or manor. *Thomas* v. *Jenkins*, 6 Adol. & E. 525. The Livingston line, six miles long, was of a *quasi* public nature. Duly-certified copies of a map of the patent made in 1815, and of another made in 1835, on file in the office of the secretary of state, upon which this line was drawn, were properly received in evidence for the same reason. A published county map made in 1874, widely distributed throughout the county, a copy of which was in the defendant's possession, upon which the same line was drawn and the lands of the parties indicated, was hardly admissible as evidence of ancient reputation; but we think was admissible as confirmatory of that reputation as otherwise established, and as indicating its general diffusion, and as bringing it home to the knowledge of the defendant. The maps read in evidence by the plaintiff and other testimony tended to show that there was a set-off in the Livingston line at the north-east corner of the plaintiff's lot. If so, it probably resulted from establishing the Livingston line along the Elmendorf tract by beginning at the southerly side of great lot No. 8, and running northerly as far as the Elmendorf tract extended, and beginning at the northerly side of the great lot, and running southerly as far as the Duer tract extended. The two lines which in theory ought to unite in the middle of the tract, and form one straight line across it, separated, and thus formed a set-off. If this were so, then a line in the plaintiff's deed, described as running from one point to another along the Livingston line, would turn the corner made by the set-off supposed, and would run on two courses. The court instructed the jury that, if they were satisfied the fact were as indicated, it would be proper for them to run between the two points mentioned as the beginning

and end of the course, by following the line to the corner, turning the corner, and proceeding to the terminal point of the course. The instruction was clearly right. The plaintiff, in testifying to his occupation of his land, and to the facts respecting it, testified that one Patchin had several years ago encroached upon the *locus in quo,* and cut some trees, and that he had compelled him to desist. He had the right to show how far he occupied under his deed, and, to do this, to show what were the facts of his occupation. The defendant on the argument offered to hand up the record of a deed which was not put in evidence upon the trial. This we cannot receive. Although a record, it is new evidence, and to introduce it now would be to present a different case from that tried below. We sometimes receive a record on the argument with like effect as if given upon the trial, but only to remove some objection based upon the non-production of the record, in a case where its absence on the trial or in the appeal-book is a mere informality. On the merits, we see no ground to set aside the verdict. Judgment affirmed, with costs.