ESTELLE I. STROCK AND GEORGE A. DORER, PROSECU-
TORS. v. THE MAYOR AND CITY COUNCIL OF EAST
ORANGE, AND THOMAS R. CREEDE, JOSEPH P. SCHIL-
LER AND EDWARD E. REED, PLAYGROUND COMMIS-
SIONERS OF THE CITY OF EAST ORANGE.

Submitted July 8, 1910—Decided November 5, 1910.

1. The supplement to the Playground act of 1907, approved April
   7th, 1909 (*Pamph. L., p.* 76), fairly obviates the constitutional
   objections to portions of section 3 of the original act as amended
   in 1908 as held by this court in *Strock* v. *East Orange*, 48 *Vroom*
   382.
2. The use of public playgrounds for outdoor exhibitions and con-
   tests for a limited time under direction of the playground com-
   missioners is not inconsistent with the purposes for which such
   playgrounds were authorized by the legislature and acquired by
   the municipality.
3. But if it were inconsistent, a statute authorizing it is not invalid
   on that account, for property acquired in fee by a municipality
   by condemnation and fully paid for, may by legislative authority
   be devoted to other public uses than those for which it was orig-
   inally acquired, and the use in question is a public use.
4. The collection of an admission fee at such exhibitions by the
   municipal commission controlling the playground does not amount
   to double taxation.

On *certiorari.*

Before Justices PARKER and BERGEN.

For the prosecutors, *Lum, Tamblyn & Colyer.*

For the defendants, *Jerome D. Gedney.*

The opinion of the court was delivered by

PARKER, J. In *Strock* v. *East Orange, 48 Vroom* 382, we
set aside a resolution of the playground commissioners of
East Orange granting a permit for the use of the local play-
ground, for the reason that section 3 of the Playground act
as amended in 1908 (*Pamph. L., p.* 163), established an

illusory classification of playgrounds by acreage; and also because it permitted a use of municipal property that was tantamount to giving it in aid of individuals or associations.

Subsequent to this decision the legislature passed a supplement to the Playground act in 1909 (*Pamph. L., p.* 76) apparently designed to cure these defects, and which enacts as follows:

"The board of playground commissioners created or constituted in any city of this state, in order to provide the funds, in whole or in part, necessary to improve, maintain and police the playground or recreation places under its control, shall have the power and authority to arrange and provide for the giving of outdoor exhibitions, concerts, games and contests, and the power and authority to use and employ the said playgrounds or recreation places for the purpose of giving thereon outdoor exhibitions, concerts and contests, and said board shall have the power and authority to charge and collect a reasonable admission fee for each person entering such playground or recreation place during the time or times when the same is being used or employed for such purpose; provided, however, that the said board shall not use or employ any such playground or recreation place for such purpose for a greater period than eight hours in any week, nor on more than two days in any one week, and when any such playground or recreation place is used for such purpose no admission fee shall be charged or collected from children under twelve years of age."

In pursuance of this supplement, the playground commissioners in February, 1910, passed the following resolution, which is now before us on *certiorari:*

"*Resolved,* That the board of playground commissioners of the city of East Orange, does hereby determine it shall and will, under the authority of the act of 1909, for the purpose of providing funds for the maintenance, care and policing of the playground, provide for the playing of baseball games at the East Orange oval on the afternoons of the first and third Saturdays of June, July, August and September of this year,

at which games an admission fee of twenty-five cents shall be charged to all persons over the age of twelve years.

"*Be it further resolved,* That the secretary of this board be and he is hereby directed to arrange for such games with suitable teams of ball players upon terms most advantageous to the city of East Orange, and not exceeding in any case payment of more than forty per cent. of the net receipts to the baseball teams which are to play any of said games; *provided.* that each and every proposition for the playing of such games shall, before it becomes binding, be submitted to and approved by this board.

"*Resolved,* That it is the sense of this board that permission be granted to the State Y. M. C. A. to hold an athletic meet and baseball game at the East Orange oval, Saturday, June 11th, 1910, upon the following terms: An admission fee of twenty-five cents be charged to all persons over the age of twelve years; the State Y. M. C. A. to pay all the expense of advertising and all other incidental expenses, and the State Y. M. C. A. to receive forty per cent. of the net receipts."

The question now submitted is whether the supplement of 1909 and the resolution of 1910 passed thereunder are invalid for the reasons given in the former opinion of this court respecting the other resolutions, or for any other reason.

It will be observed that the acreage clause is eliminated from the statute of 1909, and therefore that point is out of the case, the statute applying to all playgrounds irrespective of area.

It should be noted that by the act of 1909 the playgrounds cannot be used in any one week on more than two days, nor for a total period of more than eight hours. This seems to dispose of our criticism that by the act of 1908 the commissioners were in effect empowered to permit private organizations to monopolize the ground for the entire season.

The act of 1909 further differs from that of 1908 in resting the authority to use the playground for exhibitions, &c., on the theory of raising funds to provide for the improvement, maintenance and policing of the playgrounds, and in contemplating the collection for that purpose by the commissioners

of a reasonable admission fee; whereas in the amendment of 1908 nothing is said about revenue or the collection of admission fees, but the board was left free to give the use of the playgrounds without compensation and thus enable the licensee for the time being to make money out of them.

Another difference worthy of note, although perhaps not so important, is that instead of granting permits to organizations or individuals as contemplated by the act of 1908, the new statute speaks of "arranging and providing for the giving of exhibitions," &c. The difference in the scheme seems to be plain. Instead of undertaking to endow the playground commission with power to give away the use of public property for nothing, and for indefinite periods by successive permits, thereby depriving the public of any opportunity of using the playground except on payment of an admission fee, and then only for the purpose of witnessing an exhibition, the legislature has formulated a plan for the partial and restricted use of the playgrounds for exhibitions under the direct auspices of the commissioners, and with the requirement that the net receipts shall be used in payment of expenses for policing, maintenance and improvement.

We are asked to declare this act unconstitutional on the ground previously urged as affecting the act of 1908, viz., that it authorizes the giving away of public property for private benefit, but an act of the legislature should not be declared unconstitutional unless it is clearly so; and any reasonable construction of the act that will save it should be adopted. Such a construction, we think, is available in the present case. We think that the giving of occasional athletic exhibitions is not inconsistent with the idea of a playground, but entirely germane to it. The playground, after all, is nothing but a modified park, a place for public resort and recreation, and considerable latitude is allowed to municipal bodies in charge of parks in the matter of furnishing or arranging for special facilities to certain portions of the public, in consideration of a special charge for the same. Park concessions for restaurants, boats to hire, donkey rides, rolling chairs, and so on, are familiar to every one; and the payment of a special charge

for each of them is a matter of course. The practice of letting out concessions on public grounds for revenue purposes is expressly recognized by statute in the case of seashore cities. *Pamph. L.* 1900, *p.* 285; *Pamph. L.* 1904, *p.* 199. See 28 *Cyc.* 938. So also, the authorities may even exclude the general public for a time and restrict the use of the park for that period to a limited portion of the public, so long as the length of time is not unreasonable. 28 *Cyc.* 937. In *Sherburne* v. *Portsmouth,* 72 *N. H.* 539, a New Hampshire case, the use of a common for a baseball ground was under discussion and the court was of opinion that the test of legality was whether the use was public, in accordance with the dedication, and not an unreasonable use, especially as to time. We think this view is a sound one, and that it may safely be adopted for the purposes of the present case. The question of dedication, as will appear presently, does not arise in this case. That the proposed use is public, we think satisfactorily appears. While not appropriate to the entire public, it is adapted for a considerable portion of the public and intended to furnish that portion, for a limited period, with legitimate recreation. It is quite as public in character as donkey rides for children and restaurants for the hungry in a park. The period of time, also, is strictly limited to eight hours in a week, which the legislature, by so enacting, has declared to be reasonable, and which manifestly is reasonable.

But it is claimed that the provision for charging entrance fees is for the purpose of raising revenue and consequently an exercise of the power of taxation, and thus creates a double taxation by requiring taxpayers to pay an additional fee to use the grounds purchased and otherwise maintained with their money. But we do not think this can fairly be called double taxation, because the necessary effect of charging an entrance fee is to reduce *pro tanto* the amount necessary to be raised by general taxation. Whether the amount received will probably be adequate for that purpose is a question left by the legislature to the business judgment of the commissioners, and will be a test of the propriety of their action in a particular case, but not a defect in the law itself.

So we do not think that the act of 1908, fairly construed, justifies or authorizes the park commissioners to give away any municipal property or the use of it. We think, on the other hand, that a proper construction of the act requires them to collect a fair and reasonable compensation to the city for the limited period of time for which the use of the playground may be granted. This idea is embodied in the words "arrange and provide for" and in the further provision that the board may charge an admission fee. So long, therefore, as the commission, in arranging for the giving of outdoor exhibitions, &c., do so on reasonable terms, which should secure a fair revenue for the city from the privileges granted to the limited extent permitted by the present statute, we do not think that its action in arranging for an exhibition with individuals or organizations on a percentage basis is illegal. The test will be whether the proportion of the receipts coming to the city is reasonable or otherwise, and this point is not made in the present case.

Certain other points raised in the brief of prosecutors are entitled to notice. The first is that the playground in question, the East Orange oval, was dedicated to the use of the public for a playground, and cannot be diverted from that use. The answer to this is that no dedication is shown in the present case. The act of 1907 and its supplements and amendments authorize the acquisition of playgrounds by rental, purchase or condemnation. We fail to find in any of the acts any provision contemplating acquisition by dedication, but if we have overlooked such a provision, there is still no proof in the present case that the playground in question was so acquired. We think it is true that if land is dedicated to public use for certain purposes, it is not within the power of the municipality or of the legislature to authorize the municipality to divert such land to other purposes without first exercising the right of eminent domain and paying to the owner of the fee a proper compensation therefor. But when land has been acquired for public use, as for a park, by condemnation and payment to the owner of its full value, or by sale and purchase, it seems to be competent for the

legislature to authorize the municipality so acquiring it to use it for other purposes. *Brooklyn Park Commissioners* v. *Armstrong,* 45 *N. Y.* 235.

Another point raised by prosecutors is that the act of 1909 is unconstitutional as special legislation regulating the internal affairs of towns and counties, in discriminating against children of twelve years and upwards. The provision of that act is that when the playground is used for exhibition purposes, and an admission fee is charged, no fee shall be collected from children under twelve years of age. The claim is that this creates an illusory classification; but the classification is not one of municipalities or of playgrounds, but of the children, and applies to all playgrounds, and, of course, is not within the constitutional provisions invoked.

Again, it is urged that the act of 1907 and supplement of 1909 are both unconstitutional as being local or special laws granting exclusive privileges to corporations, associations or individuals; but we do not so understand the effect of the legislation. Our understanding of the effect of the act of 1907, especially as regulated by the supplement of 1909, is that the playground commissioners, for the purpose of raising revenue to pay expenses and of entertaining such portion of the public as cares to attend, may employ individuals or organizations to furnish exhibition games at such playgrounds for a reasonable compensation, and may charge admission fees for such purpose. We cannot see that there is any exclusive privilege or franchise involved in this.

On the whole, therefore, we do not think that the legislature exceeded its powers in passing the act of 1909, construed as we think it should be construed, nor that the board of playground commissioners of East Orange has acted illegally under that act in passing the resolution in question.

The writ of *certiorari* will be dismissed.