CHARLES W. SELLICK AND TERISE, HIS WIFE, PLAIN-
TIFFS-RESPONDENTS, v. JERSEY CENTRAL POWER
& LIGHT COMPANY, A BODY CORPORATE, DEFENDANT-
APPELLANT.

Submitted October 27, 1939—Decided January 25, 1940.

For the plaintiffs-respondents, *Parsons, Labrecque &
Borden*.

For the defendant-appellant, *Autenrieth & Wortendyke*.

The opinion of the court was delivered by

HAGUE, J. This is an action in ejectment. It was tried in
the Supreme Court (Monmouth county) and the court

directed a verdict against the defendant and in favor of plaintiff. Defendant appealed to this court. The purpose of the suit is to free the lands of the plaintiffs from an easement claimed by the defendant utility company.

The easement originally was granted in 1907, by one Frost, plaintiffs' predecessor in title, who then owned the land. He granted and conveyed to the Jersey Central Traction Company a right to construct a roadbed across his land, tracks and overhead structure "to be built and maintained *in connection with and incident to* the operation of its trolley system" (italics ours) to be operated by motor power other than steam, to operate its trolley system over same, and to transmit electrical current over the lands described "for its own use and for the use of others," with the *proviso* that when the right of way was abandoned "the same shall revert absolutely to the party of the first part, their heirs and assigns."

Frost's widow conveyed to plaintiff Sellick. In 1923 operation of the trolley system was discontinued and the Board of Public Utility Commissioners of this state approved a cessation of operation and laid down conditions for the dissolution of the said Jersey Central Traction Company.

During the time the trolley system was operated the utility company had also transmitted electricity over the right of way, sold it to another utility company which resold to the public. After the abandonment of the trolley service, the rails in the roadbed and the trolley wires were removed. The utility company which transmitted electricity over the land continued to do so, having by deed in 1917 taken over the power plant, &c., of the Jersey Traction Company, and that company which since 1917 had made use of the right granted to the traction company finally merged with the defendant company—the appellant here, Jersey Central Power & Light Co.

The plaintiffs claim that all such rights that arose by the easement granted ceased to exist upon the termination of the trolley service and the dissolution of that company, and that the right to transmit electric energy being merely incidental to the maintenance of the trolley system, ended when the traction company was dissolved.

The appellant's position is that the grant made to the Jersey Central Traction Company was such that the company or its grantee had the right to transmit electrical current over said lands for its own use and for the use of others independent of operating a trolley service; that such use has been continued and continues even though all other uses contained in the grant have been abandoned; that therefore an additional burden was placed on the lands sufficient to overcome the reverter clause contained in the grant and that before there can be a reversion to the present owners—the plaintiffs—all uses must be abandoned.

Looking at the agreement made between Frost and the traction company in 1907, it is quite clear that all that was granted thereby was a privilege or easement over certain lands described. The *habendum* clause reads:

"To have and to hold the above granted premises unto said party of the second part, its successors and assigns, for the uses and purposes herein mentioned, and

"In the event of the abandonment of such right of way by the party of the second part, the same shall revert absolutely to the party of the first part, their heirs and assigns."

From the *habendum* clause it is clear that the intention of the parties, as gathered from the clause itself, sustains the position of the plaintiffs but, of course, this clause in instruments of this kind cannot be used to enlarge or decrease the estate, particularly defined in the granting clause, and where there is conflict between the granting clause and the *habendum* clause the former will prevail. See *Havens* v. *Seashore Land Co.*, 47 *N. J. Eq.* 365; *Baum* v. *Canter*, 102 *Id.* 193.

But the respondent relies upon the granting clause, namely, "To construct, operate and maintain a roadbed, tracks and overhead structure to be built, operated and maintained *in connection with and incident to the operation of its trolley system* over certain lands hereinafter particularly described, * * * ," and points to the italicized language as the pertinent part of the granting clause and, in our judgment, it is controlling. The entire right to the use of the lands in question depended upon the operation of the trolley system for so long as that system was continued.

The testimony shows that originally electrical power was not generated by the traction company for sale to the public but was produced to maintain the trolley system. It was the surplus that was sold to another electric company which in turn sold to retail users. This evidence is corroboration of the trial court's interpretation of the agreement that the right to transmit current over the right of way was purely incidental to the larger privilege of running trolley cars, operated by electricity, over the land.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL. RAFFERTY, HAGUE, JJ. 15.

*For reversal*—None.