ANNA S. A. GRAF AND AUGUST GRAF, INDIVIDUALLY, AND SAID AUGUST GRAF AS EXECUTOR OF THE ESTATE OF GEORGE C. SHIPMAN, DECEASED, RUTH MARSH, DORIS MARSH, BLANCHE BELLOWS, AMY WILLIAMS KING, T. WRIGHT WILLIAMS AND ADELAIDE S. WILLIAMS, RELATORS, v. CITY OF NEWARK, RESPONDENT.

Submitted October term, 1939—Decided March 16, 1940.

Before Brogan, Chief Justice, and Justices Donges and Porter.

For the relators Ruth Marsh, Doris Marsh, Blanche Bellows, Amy Williams King, T. Wright Williams and Adelaide S. Williams, *Kussy, Cohn & Kohn* (*Raymond H. Cohn,* of counsel).

For the relators Anna S. A. Graf and August Graf, individually, and August Graf, as executor of the estate of George C. Shipman, *James D. Connell* (*Victor Ruskin,* of counsel).

For the respondent, *James F. X. O'Brien* (*Raymond Schroeder,* of counsel).

The opinion of the court was delivered by

Porter, J. This matter comes before us on a rule to show cause issued June 9th, 1934, why a peremptory or alternative writ of *mandamus* shall not be issued "commanding and enjoining the respondent to award forthwith to the relators herein damages for taking of the premises in the petition described or to apply forthwith for the appointment of three commissioners to ascertain and assess the damages suffered by the relators by reason of the taking of the lands in said petition described."

It appears that one of the petitioners died and an order for revivor was entered November 16th, 1937, suggesting said death on the record and substituting the executor and certain

other interested persons as parties. It further appears that on April 28th, 1939, a stipulation by all the parties was filed agreeing to submit the matter on briefs and on an agreed statement of facts. The matter has been continued from term to term by stipulation of the parties.

The relators claim reversionary title to certain lands situated in the city of Newark which were conveyed by their ancestor to the Morris Canal and Banking Co. (hereinafter called the Canal Company) which they contend vested in them upon the abandonment of the canal.

The pertinent facts are that the Canal Company was chartered by act of the legislature in 1824. *Pamph. L.* 1824, *p.* 158. The title of the act is "An act to incorporate a company to form an artificial navigation between the Passaic and Delaware Rivers." The company was authorized to take and possess all such lands as might be necessary for its purposes but limited (section 27) to such only as are actually necessary for the erection and use of said canal for the purpose of navigation only.

By deed dated January 9th, 1830, Charles T. Shipman, Abraham W. Kinney, John C. Hedenberg and Andrew Rankin, through whom the relators claim, conveyed to the Canal Company a parcel of land on the easterly side of High street near Academy street, Newark, fifty feet frontage and a depth of four hundred and twenty-seven feet. The deed recited that the land was "situated on the side hill where the inclined plane is located and is in part occupied by same" and also recited "provided the lands so taken and occupied shall not exceed fifty feet in width for the inclined plane, towing path and race way for the water." The act of the legislature incorporating the Canal Company is recited in the deed and the *habendum* clause is as follows: "To have and to hold the said lands and premises to the said, The Morris Canal and Banking Company, their successors and assigns, so long as the same shall be used for the purposes for which the Morris Canal and Banking Company have power to use the same by the true intent and meaning of the said act."

The legislature authorized the state to acquire the canal in whole or in part in contemplation of its abandonment.

*Pamph. L.* 1922, *p.* 367. In pursuance therewith the canal property including the premises in question was duly conveyed to the state in 1923 by the Canal Company and its leasee, the Lehigh Valley Railroad Co. *Pamph. L.* 1924, *p.* 151, provided that upon the abandonment of navigation on the canal, municipalities were authorized to acquire such of the canal as was situated within their borders. The respondent, city of Newark, under the authority of this statute did acquire the canal property within its borders and has since used the property for an electric railway and for general highway purposes for public use. The property, the subject-matter of this proceeding, is being so used.

The contention of the relators is that the charter of the Canal Company limited it to use its property for the purpose of navigation only; that the grant by said deed of Shipman et al. of January 9th, 1830, being "so long as the same shall be used for the purposes for which the canal company have power to use the same by the true intent and meaning of the Act" caused the title to revert to the grantors when the canal property was put to other use than "navigation only" it having no power to use it otherwise.

The pertinent question and the one on which the case turns, it seems to us, is whether the use of this property was so restricted. We conclude not. Section 25 of the act under which the canal was created, *Pamph. L.* 1824, *supra,* clearly provided that the canal was to be a public highway. It said "The said canal when completed shall forever thereafter be esteemed a public highway, free for the transportation of any goods, commodities or produce whatsoever, on payment of the toll," &c. *Pamph. L.* 1924, *p.* 506, authorized the Canal Company "to discontinue the use as a means of transportation by water" of the canal and further provided that the property "shall be applied and are hereby dedicated to the public use as public highways for the transportation and passage thereon of persons and property and for any and all further purposes of such highways."

The Court of Errors and Appeals held in *Barnett* v. *Johnson,* 15 *N. J. Eq.* 481, that the canal was a public highway both by express legislative enactment and also by its intrinsic

nature and that the exaction of tolls made it none the less a public highway. To the same effect is *Morris Canal and Banking Co.* v. *Fagan*, 18 *Id.* 215. The late Vice-Chancellor Backes said in 1929 in *Gill* v. *Ferrone* (unreported) in dealing with the effect on property rights of the abandonment of this canal that "The abandonment of one use of a public highway for another consistent use does not work a reversion to the owner from whom it was taken by condemnation," citing in support cases from Kentucky, Ohio and New York. We think the same principle applies when for full value the whole title was acquired whether the acquisition was by condemnation or by purchase as in the instant case. *Strock* v. *East Orange*, 80 *N. J. L.* 618; *Carroll* v. *Newark*, 108 *Id.* 323.

It is next argued by the relators that the said Shipman et al. conveyance in question to the Canal Company conveyed an estate upon conditional limitation, which terminated upon the abandonment of the canal. We think there is no merit to this point because, as we have said, the property of the canal was for public highways and the conveyance in question was for the use of the land "so long as the same shall be used for the purposes for which the Morris Canal and Banking Co. have power to use the same by the true intent and meaning of the said Act." Moreover not only did the Canal Company have authority, as above shown, by its charter to use the canal as a public highway but other acts of the legislature, those relating to the abandonment and the disposition of its property, clearly recognized it as a public highway. These legislative enactments are in effect amendments to the charter of the Canal Company and are in *pari materia* and should be construed together as a whole. Certainly the abandonment of the canal as such does not raise any presumption that the state relinquished its rights in the property. *McCarter* v. *Lehigh Valley Railroad Co.*, 78 *N. J. Eq.* 346 (at *p.* 360).

It is our view that there has been no change in the use of the land as a public highway, that there was no reversion and that the city as successor in title to the Canal Company acquired a good and valid title from the state. For these reasons the rule to show cause is discharged, with costs.