The complainants, and the counter-claiming defendants, seek the settlement of a long pending dispute about the *Page 371 
title of two improved lots fronting on the southerly side of Tillou Road between Ridgewood Road and Wyoming Avenue in South Orange, New Jersey. The lots are on the same street separated by intervening owners. Each of the lots has a frontage of 100 feet on Tillou Road.
The defendants concededly are the owners of the land adjacent to the rear of both lots. The disputed title affects the southerly or rear boundary lines of complainants' lots. The complainants base their titles on the descriptions contained in their respective deeds. The complainant Wood allegedly holds title to the disputed area by deed from Marjorie P. Moran, dated March 29th, 1923, recorded in the Essex County Register's office on April 10th, 1923, in Book K-68 of Deeds for said county, pages 139, c., while the complainant Hammer claims the disputed area by virtue of a deed executed by Robert W. Steed and his wife, dated June 17th, 1921, recorded in the office of the Register of Essex County on June 20th, 1921, in Book E-65 of Deeds for said county on pages 494, 495. The lots in both deeds are described by metes and bounds, and also by lot numbers as laid down in a certain plan of lots called "Tillou Road" surveyed April, 1893, by Lewis B. Taylor, which map was filed in the office of the Register of Essex County in May, 1893, and also July 16th, 1894.
The complainant Wood's deed places his rear line so that its western terminus is 249.78 feet from the southerly side of Tillou Road and its easterly terminus is 249.11 feet from the southerly side of Tillou Road. The defendant Constance Hart contends that the true rear boundary line of that lot is located so that its western terminus is 210.78 from the southerly side of Tillou Road and its eastern terminus is 211.77 feet from the southerly side of Tillou Road. The quadrangle formed by these two conflicting rear boundary lines and the projected side lines of the lot, constitute the area in dispute between the complainant Wood and defendant Constance Hart. (Exhibit D-13.)
The deed of complainant Hammer places his rear line so that its western terminus is 243.73 feet from the southerly side of Tillou Road and its easterly terminus is 243.05 feet *Page 372 
from the southerly side of Tillou Road. The defendant Constance Hart contends that the true rear boundary of the Hammer lot is located so that its western terminus is 219.64 feet from the southerly side of Tillou Road and its eastern terminus is 220.61 feet from the southerly side of Tillou Road. The quadrangle formed by these two conflicting rear boundary lines and the projected side lines of the lot, constitute the area in dispute between the complainant Hammer and the defendant Constance C. Hart. (Exhibit D-14.)
The defendant Constance C. Hart acquired title to certain lands and premises, which she says includes the title to the strip or premises in issue, from Catherine A. Gardner by deed dated May 21st, 1887, recorded in the office of the Register of Essex County June 21st, 1887, in Book R-23 of Deeds, page 72. The premises therein mentioned are described as follows:
"All that tract or parcel of land and premises, hereinafter particularly described, situate, lying and being in the Village of South Orange, in the County of Essex and State of New Jersey.
"Beginning at the Northerly Corner of Moses A. Peck's land on the top of the Mountain, thence first with lands of Thomas D. Killburn and of Job Brown's estate North thirty degrees East Six hundred and forty feet to lands in possession of Abijah F. Tillou, thence second with said Tillou Tract South fifty four degrees and ten minutes East three thousand two hundred and twenty eight feet to the Rectory Lot, thence third with said Rectory Lot South twenty nine degrees West three hundred and twelve feet into South Orange Avenue, thence fourth up said Avenue and with Moses A. Peck's line North sixty degrees West three thousand two hundred and seventeen feet to the place of beginning. Containing thirty five Acres more or less."
The defendant Constance Hart's grantor received her title by deed recorded in 1879 or 1880 in Book Q 20 of Deeds, page 195,c. The title of the defendant Hofe's premises came out of this Hart tract.
The defendant Constance Hart bases her contention of the location of the two rear boundary lines upon what appears to have been the location of an old fence which allegedly originally ran from a point on Ridgewood Road, between South Orange Avenue and Tillou Road, in a westerly direction to *Page 373 
a point on the top of the mountain. Traces of the fence, it is alleged by the defendants, still exist. They say that the true rear boundary lines of complainants' respective lots lay in and formed portions of the dividing line marked by said fence. The issue herein is purely one of fact; all counsel so concede.
The land in dispute appears originally to have been part of a large tract of land known as the Brown farm. The head of the Brown family died leaving the property to his sons, Job, Samuel, and a son known as either Thomas or David Brown. The original farm was thereupon divided into three separate parts and awarded to the sons; the one closest to what is now known as South Orange Avenue went to the son, Job Brown; the next part to the north went to the son, Samuel Brown; the remaining and third part, which was north of the Samuel Brown farm, went to the son known as Thomas or David Brown. The property of the complainants comes from the Samuel Brown farm, and the defendants came from the Job Brown farm. The latter property did not extend easterly to Ridgewood Road as did the Samuel Brown farm, and the one adjoining to the north. The easterly portion of the Job Brown farm was bounded on the east by what has been referred to in the evidence as the Rectory property, which belonged to the Church of the Holy Communion. It extended from the easterly line of the Job Brown farm to Ridgewood Road, and from the southerly line of the Samuel Brown farm to South Orange Avenue on the south.
Upon the death of Samuel Brown his title descended to his daughter Parmela. When she died her interest in the property thereupon descended to the Tillou family. The Tillou family consisted of two brothers who testified in this case, and a sister. Samuel Brown and his daughter Parmela at no time conveyed any part of the premises. No transfer of any part of the premises appears to have been made until the Tillous conveyed the farm to John T. McLaughlin by deed dated September 1st, 1892, recorded November 2d 1892, in the office of the Register of Essex County in Book F-27 of Deeds for said county, pages 236-238. (ExhibitC-4.) The description of the premises in that deed is as follows: *Page 374 
"All that certain tract or parcel of land and premises hereinafter particularly described, situate, lying and being in the Village, and Township of South Orange, in the County of Essex and State of New Jersey, to wit:
"Beginning at the Easterly corner of the `Rectory' property of the Church of the Holy Communion, on the North Westerly side of Ridgewood Road; thence (1) along the line of said `Rectory' tract and of Constance Hart, north forty eight degrees eight minutes West, thirty three hundred and fifty three feet and fifty six hundredths of a foot to the top of the Mountain, and Easterly corner of lands of Sarah L. Tompkins; thence (2) along said Tompkins line North forty seven degrees forty eight minutes West nine hundred thirty six feet and fifty eight hundredths of a foot to the Southerly corner of lands of Henry and Frank Lyon, and others; thence (3) along said Lyon Tract, North forty degrees East eleven hundred eighty seven feet and seventy nine hundredths of a foot to lands of Estate of William Redmond; thence (4) along said Estate's line South, forty six degrees forty seven minutes East, eight hundred forty nine feet to the Northerly corner of lands of James F. Woodhouse, on the top of the mountain; thence (5) along the line of said Woodhouse and of Henrietta Meeker, South thirty three degrees, seven minutes West, five hundred and ninety feet to said Meeker's Westerly corner on the top of the mountain; thence (6) along said Meeker's line South, forty-seven degrees, twenty two minutes East, thirty three hundred and fifty three feet and thirty eight hundredths of a foot to Ridgewood Road; thence (7) along the North Westerly side of said Road, South thirty seven degrees thirty minutes West, five hundred forty six feet to the place of Beginning. Containing sixty eight and 19/100 Acres, more or less, and however otherwise bounded or described and of whatever other designated area, intending to convey, and hereby conveying all and only the premises owned by the parties of the first part, situate between Ridgewood Road, and the aforesaid Lyon tract, whether the aforegoing description is absolutely correct or not."
After McLaughlin obtained the title there were various conveyances. Eventually, part of the land in the original deed became vested in these two complainants.
There are a number of conveyances of parts of the Job Brown tract recorded, with descriptions by metes and bounds, beginning as far back as 1824.
After the conveyance by the Tillous to McLaughlin, a surveyor, named Lewis B. Taylor, made a map which is dated April, 1893, filed in the office of the Register of Essex County May, 1893, and also July 16th, 1894, frequently referred to and used by counsel in the examination of witnesses at the hearing, and in their arguments at its conclusion. It was used by the defendants' witness Halsey in his survey of the *Page 375 
premises involved herein. While that map was offered in evidence subject to defendants' objection "until it is established that it is correct" (Record 23a), both opposing sides made generous and frequent use of it and no motion was made to exclude it. I, therefore, feel that the purposes for which it was used in the hearing must be considered and given due effect. That map located Tillou Road; and that location has continued until the present time. Its place of location is not in issue. The descriptions of complainants' lands were taken from the Taylor map. The defendants had a survey made of their property by Edmund R. Halsey, who testified for them in these proceedings. Other surveyors testified for the defendants who, to some extent, supported the testimony of Halsey as to the locations made and submitted by him in the evidence. The Halsey surveys sustain the defendants' titles to the disputed area. Halsey's surveys are based to some extent upon what he refers to as "a line of occupation." The complainants' claims are based upon a survey of the entire section made by a surveyor named George A. Bard, who testified at the hearing. Bard testified that the Taylor map is correct, while Halsey says it is not correct. Bard contends that accurate surveys could be made through the use of the descriptions in the deeds aforesaid. Halsey does not agree with him, and says that an accurate survey could not be made by using the descriptions in the deeds.
While the defendants lay emphasis on the fact of the existence at some time of a fence on a portion of the boundary line between the Hart and Tillou tracts, I am not persuaded that the fence was maintained by anybody for the purpose of having it act as a boundary line. There was no convincing evidence to that effect. There was some evidence submitted by the Hart family that their recollection was that a fence had been erected to keep cows from straying from one farm to the other. The complainants in the presentation of their case, I find, established and located a definite and true beginning point of the courses mentioned in the Tillou-McLaughlin deed.
Bard testifying for the complainants said that he found such a point at the top of the mountain at an old wall, which *Page 376 
the defendants' surveyor Halsey admitted existed. This wall ran across the top of the mountain from a northerly to a southerly point. There was an easterly extension of this old wall at the point of division between the Hart and Tillou tracts, and also another wall extending easterly on the line of division between the Tillou tract on the north and the property next to it in that direction.
In the conveyances out of the title of the property acquired by the defendant Constance Hart, the so-called boundary line of the Hart and Hofe property, as far back as 1836, appears to be a straight line of some 3,300 feet which extended from the Rectory lot to the top of the mountain. The Tillou deed to McLaughlin also indicates a straight line from the Rectory lot to the top of the mountain.
Halsey, on cross-examination, testified (pages 216, 217 Record):
"Q. I am talking about the line in the conveyance from Gardner to Hart which describes the course from the top of the mountain down to the Rectory lot. That is the course I am concerned with? A. Well, I couldn't be concerned with the course because I couldn't get it.
"Q. That is what I say, the survey is not in accordance with the course from Gardner to Hart and from Tillou to whoever he conveyed in 1902? A. No, because they changed all the courses.
"Q. Let me ask you this, sir. Isn't it true, sir, that in the conveyance from Gardner to Hart, Gardner being Hart's grantor, and the conveyance from Tillou to McLaughlin, and I think he was the first grantee, isn't it true that same course, namely, the dividing line between Hart and Tillou, that is, the northerly boundary line of Hart and the southerly boundary line of Tillou, were both in the deeds of conveyance a straight line? A. Yes, sir, they were."
The Halsey surveys consisted of several lines of different angles, which were based as Halsey testified upon the lines of the old fence. There is no testimony about the maintenance of the fence line. It appeared to be an irregular line. There were marks or lines on some of the trees which indicated that wires had been at one time attached to them. Mr. *Page 377 
Justice Depue in Jackson v. Perrine, 35 N.J. Law 137, among other things, said:
"Testimony of the situation and location of fences, and their recognition by the acts of the parties, as the boundaries of their lands, is always competent evidence in cases of disputed boundaries. The competency of such evidence does not depend upon the maintenance of the fences for the period of twenty years, which would be sufficient to give title. Its admissibility is based upon the principle that the placing of fences, and possession in accordance therewith, is an admission by the owner against his interest, of the limits of the ownership. In cases involving a dispute as to boundaries, the contention is not as to the competency of evidence of this kind, but as to its effect in the location of the premises, by the description of them contained in the deed.
"The law is well settled, that where the language of a deed admits of but one construction, and the location of the premises intended to be conveyed is clearly ascertained by a sufficient description in the deed, by courses, distances, or monuments, it cannot be controlled by any different exposition derived from the acts of the parties in locating the premises. But it is equally well settled, that when the language is equivocal, and the location of the premises is made doubtful, either by the insufficiency of the description, or the inconsistency of two or more parts of the description, the construction put upon the deed by the parties in locating the premises, may be resorted to, to aid in ascertaining the intention of the parties."
An examination of the Tillou deed and the Hart deed gives no indication that there is any ambiguity in the description of the lands, nor do they show any inconsistency in two or more parts of the description.
Counsel for the defendant Constance Hart challenges the accuracy of the description of the beginning point in the Tillou deed, which recites: "Beginning at the easterly corner of the `Rectory' property of the Church of the Holy Communion, on the northwesterly side of the Ridgewood Road; thence (1) * * *." He says "that obviously there are two easterly corners of any four-sided tract, viz.: a northeasterly *Page 378 
and a southeasterly; that the above language of the description leaves it uncertain which corner is meant and makes it impossible to locate the point referred to." I do not agree with his contention. Ridgewood Road runs in a northwesterly direction, and the reference in the deed to the easterly corner of the Rectory property is an accurate description. It shows the exact point of the property. It is obviously delineated by the reference meridian or the compass point on the maps in evidence.
The courses in the conveyances to the complainants are described by metes and bounds. The defendants' titles are also based upon descriptions by metes and bounds. The early deeds to the lands in question are based on descriptions by metes and bounds.
I find no ambiguity in the descriptions in any of the deeds. They clearly recite the beginning points of the lands and the courses following.
The testimony of the defendants' witness Halsey is not persuasive and convincing. It lacks consistency and certainty. He found fault with the accuracy of the Taylor map, but nevertheless admitted that he had used it and relied upon it. On cross-examination he testified (page 220, Record).
"Q. Wasn't there one definite beginning point that you took these surveys from? A. Yes.
"Q. Where was that? A. That was the Parsonage lot.
"Q. Which corner, the northwest? A. Well, let me see. I think it was the northwest corner of the Parsonage lot, yes.
"Q. And was that point at any time tied in by you with the northwest corner of Ridgewood Road and Tillou Road? A. Yes.
"Q. And you had the map of Tillou Road before you when you made your first survey, didn't you? A. I did.
"Q. You knew Mr. Taylor, the gentleman that made the map? A. Yes, I saw him and inquired of him about the map.
"Q. Did you know him very well? A. Very well.
"Q. Did you know his reputation? A. Yes.
"Q. Did you have respect for his ability and accuracy? A. Well, I don't know that has anything to do with it. *Page 379 
 "Q. I ask you did you have?
"The witness: Your Honor, if I didn't have I don't intend to tell anybody unless I have to.
"By Mr. McGlynn:
"Q. Didn't you accept his map as one of the filed maps of the plot? A. I had to accept it.
"Q. And didn't you show the lines of it on your surveys? A. Yes.
"Q. Did you make any attempt to check up and find out if the lines of the map made by him in 1893 agreed with the courses of the conveyance from the Tillous to McLaughlin? A. I did.
"Q. Did you find they did? A. I found that the map did, but when I asked Abijah Tillou he said they didn't.
"Q. Is that the reason you showed different lines on the northerly line of the Hart tract because of what Mr. Tillou told you? A. That is the reason I showed the line of possession as the line which he had bought.
"Q. Is that the reason you showed the line of possession instead of the line of the deed? A. Yes, sir.
"Q. And is that the only evidence you had at that time to substantiate your placing on a survey your interlineation that the possession was the true boundary line instead of the deed line? A. That was my reason for saying that was the true line, yes."
Halsey accepted Taylor's map for the location of Tillou Road and for all of the side lines of the lots fronting on Tillou Road; but he refused to accept the rear line of the properties on the map as being correct.
The testimony in this matter is largely technical. Its presentation ran over an extensive period. Arguments continued herein up to a week, or two, ago. The points involved have been in dispute between the parties for many years. I feel that the evidence warrants a decree in favor of the complainants for the relief sought, and a dismissal of the defendants' counter-claims. *Page 380