**CHIDESTER et al. v. CITY OF NEWARK et al.**

**No. 9152.**

Circuit Court of Appeals, Third Circuit.

Argued Jan. 20, 1947.

Decided June 19, 1947.

---

Chas. P. Rogers, of New York City (Reed, Reynolds & Smith, of Newark, N. J., and Wm. E. Clark, of New York City, on the brief), for appellants.

William H. Speer, of Newark, N. J., (Thomas L. Parsonnet and Thomas M. Kane, both of Newark, N.J., on the brief), for appellees.

Before BIGGS and KALODNER, Circuit Judges, and McGRANERY, District Judge.

KALODNER, Circuit Judge.

This action in ejectment was begun in 1936. Over six years ago we reversed a judgment against the appellants, D.C., 31 F.Supp. 892, and remanded, because there had been no trial and all the evidence had not been adduced, 3 Cir., 117, F.2d 981. A trial was had, and the court below determined the cause against the appellants. D.C., 58 F.Supp. 787. On this appeal from that determination, we have to resolve an adjective question, whether there are indispensable parties who have not been joined, and two substantive questions, which of

three deeds is valid and whether any reversionary rights exist under the valid deed or deeds.

The appellants are some of the heirs of one James Searing, the grantor in the three deeds involved. They reside outside New Jersey. There are, however, other heirs, some living in distant states, and others living in New Jersey. Those living in distant states did not join the appellants and those living in New Jersey were amended out of the original complaint because their presence would oust the federal jurisdiction, which insofar as this case is concerned, rests exclusively upon diversity of citizenship. All the heirs, of course, are interested in one and the same title as like heirs at law of the common ancestor. The issue is whether their interests are "joint" within the contemplation of Rule 19, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. If so, the presence of the other heirs is required, but that presence would not help the appellants, some of them being from the same state as the appellee. Nevertheless, if the other heirs are necessary, or merely proper parties, we may, by virtue of the same rule, proceed to the merits.

■■■ This Court has already had its say on indispensable parties generally. Picking v. Pennsylvania R. Co., 3 Cir., 1945, 152 F.2d 753; United States v. Washington Institute of Technology, Inc., 3 Cir., 1943, 138 F.2d 25; Baird v. Peoples Bank & Trust Co., 3 Cir., 1941, 120 F.2d 1001; Samuel Goldwyn, Inc. v. United Artists Corp., 3 Cir., 1940, 113 F.2d 703. As suggested in the Washington Institute case, indispensable parties under Rule 19 are those who were indispensable prior to the rules; they have such an interest in the controversy that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience. Shields v. Barrow, 17 How. 130, 15 L.Ed 158. As suggested in the Goldwyn case, if an absent party's interest be "joint", he is indispensable.

Appellants are here claiming their undivided share as heirs at law of an alleged reversion retained by their common ances-

tor. Under New Jersey law, their interest is that of tenants in common. N.J.S.A. 3:3–2, a law which has long been on the books of that State; see 2 Compiled Statutes of New Jersey 1910, p. 1917 and 1 General Statutes of New Jersey 1896, p. 1193.

■■■ The distinguishing feature of a tenancy in common is that each "tenant" has a separate and distinct freehold. 2 Tiffany, Real Property (1938) §§ 426-428, 467. At early common law, tenants in common could sue only separately to recover their aliquot shares, since they could not make a joint devise. See Davis v. Coblens, 174 U.S. 719, 725, 726, 19 S.Ct. 832, 43 L.Ed. 1147. Later, when it was determined that they could make a joint devise, several tenants in .common, although less than all or even only one, could sue. Davis v. Coblens, supra; 18 Am.Jur. § 70.

The only case in New Jersey which has been called to our attention is Board of Chosen Freeholders of the County of Cumberland v. Buck, 1912, 79 N.J.Eq. 472, 82 A. 418, 421, which was an action to quiet title brought against a co-tenant. There the court found that "an absolute title, as to the undivided one-half thereof, vested in the heirs of John Buck, deceased, by reverter". But there it appeared that the rights of the other heirs at law of the original owner of the remaining undivided half had sold their interests to the complainant. Nevertheless, the case suggests the separability of the interests of the tenants in common.

In Young v. Garrett, 8 Cir., 1945, 149 F.2d 223, a case also holding that Rule 19 is merely declaratory of the prior law, it was held that, in an action by one tenant in common for damages for trespass, the other tenants in common were not indispensable. The law of Arkansas was there applied. Reference may be made to the case of Elmendorf v. Taylor, 1825, 23 U.S. 152, 10 Wheat. 152, 6 L.Ed. 289, wherein the Supreme Court had before it a problem not dissimilar to that in the instant case. Justice Marshall held that the other tenants in common were not indispensable parties, and, at page 166 of 10 Wheat., their absence did not prevent a decree, which, in-

cidentally, went against the suing tenant in common on the basis of his failure of title.

We find nothing in the New Jersey law to indicate that the general rules, as set out above, would not prevail. We therefore hold that, in this case, the tenants in common not joined are not indispensable parties, for while they may be interested in the outcome of this action, their interests are not "joint" and would not be affected by the judgment herein; nor would their absence prevent complete justice as between the parties who are involved, the suit being for an aliquot share only. Whether the absent parties are "necessary" is not important, for they live either too far or too close, as already noted.

Moving on to the merits, the following facts form the background of this controversy. James Searing, the common ancestor, made three deeds to the Morris Canal and Banking Company dated January 11, 1830, March 28, 1833, and March 1, 1856. The Morris Canal and Banking Company was chartered by act of legislature in 1824, P.L. 1824, p. 158, entitled "An act to incorporate a company to form an artificial navigation between the Passaic and Delaware Rivers". The company was authorized to take and possess all such lands as might be necessary for its purposes but limited, under Section 27, to only those lands as were actually necessary for the erection and use of the canal for the purpose of navigation only. Section 25 of the Act provided that "The said canal when completed, shall forever thereafter, be esteemed a public highway, free for the transportation of any goods, commodities or produce whatsoever, on payment of the tolls * * *".

The deed of 1830 is set out in the margin hereof.[1] The deed of 1833, purported to grant to the Canal Company a plot of land also situated in the Township of Newark, "being the land covered by the weight lock", which was described by courses and distances, but admittedly one call thereof was missing. There was no reservation or limitation whatsoever, but the grant was forever. The deed of 1856, executed by both James Searing and his wife, recited that the grantors " * * * Have granted, bargained, sold aliened, remised, released, and forever Quit-Claimed, and by these presents does grant, bargain, sell, alien remise, release, and forever Quit-Claim, unto * * *" the Morris Canal and Banking Company, land which was therein described fully and completely by metes and bounds, courses and distances. The *description* concluded with the statement "Reserving and excepting so much of Warren Street as is included in the above description— and the above description embraces two tracts heretofore conveyed by the said James Searing to the (Morris Canal and Banking Company) by deeds dated January 11, 1830 and March 28, 1833—The above

[1] "Whereas, by virtue of an Act of the Legislature of the State of New Jersey entitled, 'An Act to Incorporate a Company to form an artificial navigation between the Passaic and Delaware Rivers' The Morris Canal and Banking Company are authorized to construct and make a Canal, or artificial navigation, to connect the waters of the Delaware River near Easton, with the tide waters of the Passaic, and to take, occupy, possess and enjoy all such lands as may be necessary and proper to be taken and occupied by them for the said Canal, and its necessary locks, towing paths, toll houses, offices, works and devices; and whereas, the said Canal is laid across certain lands, lying in the township of Newark in the County of Essex now belonging to James Searing of the township Newark aforesaid. Now, be it known that I the said James Searing in consideration of the sum of One dollar lawful money of the United States to me in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for other considerations me thereunto moving, do hereby give, grant, bargain and sell, assign and convey to the said, The Morris Canal and Banking Company, their successors and assigns, all the said lands necessary and proper to be taken and occupied by them for the purposes aforesaid. Provided the lands so taken and occupied shall not exceed One and an half acres, for the said Canal Lock and other works & devices. To have and to hold the said lands and premises to the said The Morris Canal and Banking Company, their successors and assigns, so long as the same shall be used for the purposes for which the Morris Canal and Banking Company have power to use the same by the true intent and meaning of the said Act. * * *"

tract of land is the same now occupied by said Morris Canal and is hereby conveyed Subject to the conditions that if the said Canal shall be changed in its location, and the said land shall cease to be used for a canal then the said land shall revert to said James Searing his heirs or assigns." The habendum clause recited, "To have and to hold all and singular the above described tract or lot of land and premises with the appurtenances, unto the said (Morris Canal and Banking Company) their successors and Assigns, to the proper use, benefit and behoof of the said (Morris Canal and Banking Company), their successors and Assigns forever."

Subsequently, the Morris Canal was abandoned as a canal, the property acquired by the State of New Jersey; the City of Newark, one of the appellees, obtained the land here in controversy and the land has since been used for an electric railway, operated by the other appellee, the Public Service Coordinated Transport, Inc., a New Jersey corporation. All this was accomplished pursuant to various enabling acts of the New Jersey legislature.[2]

The contentions of the appellants are that the deeds of 1830 and 1833 are invalid, the former because the description of the property sought to be conveyed is too vague and indefinite, and the latter because the fourth call is missing thereby making it impossible to effect a close; further that extrinsic evidence is inadmissable in either instance. Finally, it is urged that the deed of 1856 is valid and operative, that it, as well as the 1830 deed, expressly created an estate in fee subject to a limitation, namely, the' abandonment of the canal, and that the canal having been abandoned the reversion was accomplished by operation of law and the title to the lands involved consequently reverted to the grantor and his heirs.

■ The court below determined that both the 1830 and the 1833 deeds were operative under the law of New Jersey, which is undoubtedly the law to be applied. In so holding, the learned court relied upon extrinsic evidence.

With respect to the 1830 deed, concededly there is a small enough description of the land; we are told only that "the said Canal is laid across certain lands, lying in the township of Newark in the County of Essex", and the grant is of "all the said lands necessary and proper to be taken and occupied" by the canal company. Appellees introduced a Map and field book showing the course of the canal across the land of various owners, including that of James Searing. This Map was duly recorded in 1828, according to New Jersey law at the time. It further discloses that the course of the canal crossed two separate plots of land the ownership of which was attributed to James Searing, one plot designated as containing 0.28 acres and another 1.04 acres, and that these two plots were separated by two other plots of different ownership. The surveyor for the appellees testified that having the Map, the various deeds to and by James Searing, and being on the land, he could survey the subject of the grant of the 1830 deed and plot it out. Admittedly, without the extrinsic evidence, and without knowing what the parties had done pursuant to the deed, the land "could not be located.

With respect to the 1833 deed, the testimony of the same surveyor was that he could plot the subject of the grant in the

[2] The legislative sequence, insofar as pertinent, is as follows:

(1) L.1922, c. 212, p. 367, authorizing the acquisition by the State of New Jersey of the Morris Canal in whole or in part. See N.J.S.A. 13:12–2.

(2) L.1924, c. 78, p. 151, enabling the various political subdivisions of the State to acquire portions of the property of the Canal Company upon the abandonment of navigation upon the canal.

(3) L.1924, c. 229, p. 506, authorizing the abandonment of navigation upon the Morris Canal, dismantling of the canal,

dedication of the property to public uses as public highways, authorizing acquisition of certain lands by municipalities for public use ("and such public use or uses shall supersede any other or different public use to which such property may have been heretofore dedicated"). See N.J.S.A. 13:12–13 to 13:12–17.

(4) L.1925, c. 75, p. 248, authorizing any municipality through which the Morris Canal passes to construct electric railways upon canal lands, and to enter into leases or contracts for the operation thereof. See N.J.S.A. 13:12–12.

same manner, despite the lack of the fourth call in the instrument.

In Opdyke v. Stephens, 1859, 28 N.J.L. 83, 4 Dutcher 83, after noting the admissibility of evidence aliunde where the description in a deed is doubtful, the court said, at page 90 of 28 N.J.L.: "When there is a latent ambiguity in the description contained in the deed, all the cases agree that evidence alone is admissible. But it is not upon this principle aliunde that the evidence is received. It is admissible in all cases where there is a doubt as to the true location of the survey, or a question as to the application of the grant to its proper subject matter. It must be constantly borne in mind that it is not a question of construction but of location. A question of construction is a pure question of law, to be decided by the court upon the terms of the instrument itself, to the exclusion of evidence aliunde, where no latent ambiguity exists. A question of location, or the application of the grant to its proper subject matter, is a question of fact to be determined by the jury by the aid of extrinsic evidence. The uniform practice in this state, it is believed, has been in accordance with these principles, and the lack of judicial authority upon the point is doubtless attributable to the fact that the question has long been regarded as settled."

To the same effect is Curtis v. Aaronson, 1886, 49 N.J.L. 68, 71, 7 A. 886, 60 Am.Rep. 584; as to what is meant by a question of construction, see Dunn v. English, 1851, 23 N.J.L. 126. That the above quotation remains the law of New Jersey is apparent from a reiteration of the principle in substantially the same words in Franklin K. Pearce Co. v. Beverly Beach, Inc., 1930, 107 N.J.L. 73, 150 A. 399. In Fuller v. Carr, 1868, 33 N.J.L. 157, it may be noted, in order to determine whether certain land passed by a deed, the court took notice of another deed not mentioned in the instrument which was the subject of the litigation, saying, at page 161 of 33 N.J.L., "These considerations, although extrinsic from the deed, are admissible, on the question of location, in ascertaining the application of the grant to its subject matter." The court in that case further subscribed to the principle that if the premises are indicated by known and definite boundaries, mention in the deed of quantity is generally merely descriptive and of no importance, but if not, it may help to ascertain them.

Proceeding, we find persuasive support for the action of the court below in Jackson v. Perrine, 1871, 35 N.J.L. 137, at page 142, wherein it was said: "The law is well settled, that where the language of a deed admits of but one construction, and the location of the premises intended to be conveyed is clearly ascertained by a sufficient description in the deed, it cannot be controlled by any different exposition derived from the acts of the parties in locating the premises. But it is equally well settled, that when the language is equivocal, and the location of the premises is made doubtful, either by the insufficiency of the description, or the inconsistency of two or more parts of the description, the construction put upon the deed by the parties in locating the premises, may be resorted to, to aid in ascertaining the intention of the parties."

Further, at page 143 of 35 N.J.L.: "In all cases where the language of a deed is of doubtful construction as to the boundaries, the construction given to it by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary is clearly shown. Stone v. Clark, 1 Met., Mass., 378, 35 Am. Dec. 370."

Similarly, in Camden & Atlantic Land Co. v. Lippincott, 1883, 45 N.J.L. 405, 418, it was said that "if the words of a grant be ambiguous, the court will call in aid the acts done under it as a clue to the intention of the parties." Of telling effect is the statement in Spottiswoode v. Morris & Essex R. Co., 1898, 61 N.J.L. 322, 339, 40 A. 505, 511: "The general doctrine of the law it that, where the true location of the premises conveyed by a deed is doubtful, a practical location by consent of the parties will aid in the construction of the deed, *and in some instances be conclusive as to the boundaries thus fixed, although the acquiescence be for a less period than twenty years.*" (Emphasis supplied.)

Although these three cases may be considered "old" today, we find the principle declared in Jackson v. Perrine repeated with approval as late as 1941 in Wood v. Hart,

130 N.J.Eq. 370, 377, 22 A.2d 341. See also Indianapolis & V. R. Co. v. Reynolds, 1888, 116 Ind. 356, 19 N.E. 141; Cincinnati, R. & Ft. W. R. Co. v. Cleveland, C., C. & St. L. R. Co., 1919, 188 Ind. 230, 123 N.E. 1, 3; 68 A.L.R. 4, 52.

This being the state of the New Jersey law, we are constrained to rule that the court below did not err in receiving and considering the evidence aliunde. Insofar as the question is one of fact, as indicated by the New Jersey decisions, we conclude that the record supports the findings of the learned trial judge. Accordingly, we affirm his determination as to the validity of the 1830 and 1833 deeds, taking particular cognizance of the fact that the land involved was taken and occupied by the grantee thereunder for a little short of a century,[3] the grantor himself living for about a quarter of a century after the deeds were executed.

Moreover, those instruments being valid and operative, it logically follows that the 1856 deed accomplished nothing, except perhaps to release the dower rights of Mrs. Searing, insofar as the latter deed "embraces two tracts heretofore conveyed by the said James Searing". It may be possible that the 1856 deed was in lieu of the prior deeds, but that, too, is a question on which the district court ruled against the appellants; we see nothing in the record that demands a different inference, especially since the 1856 deed specifically acknowledged the prior conveyances without any intimation that they were being displaced.

Nevertheless, the appellants assert that the 1856 deed in fact conveyed more than the prior grants. This is premised on the showing of the Map, previously referred to, that land in the total amount of 1.32 acres was taken, whereas even the surveyor for the appellees testified that the grant of the last instrument covered, exclusive of Warren Street, approximately 1.81 acres. It is noteworthy that despite the reference in the 1856 deed to "two tracts heretofore conveyed", the description is referred to as "the above tract of land" and "the above described tract or lot of land and premises". The record, however, amply proves that the two tracts which were the subject of the previous deeds were separated by land not owned by James Searing. Also, it appears that the 1856 deed itself included land not owned by James Searing, to wit, certain portions of the southeasterly part of the 1856 deed referred to as the Munn and Crane tracts, totalling .5307 acres. The total area of the subject of the 1856 deed was 1.8077 acres, excluding Warren Street, as provided by the deed. The difference, 1.277 acres, is less than the total of 1.32 acres indicated by the Map, and less than the total of 1.29 acres, which includes the 1.04 acres shown to have been taken according to the Map, and .25 acres taken under the 1833 deed according to the testimony of both surveyors.

In view of the evidence and the recitations in the 1856 deed, it is a justifiable conclusion that that deed was not intended to convey more than had already been conveyed by the prior deeds. It follows, therefore, that the court below properly determined that the 1856 deed was inoperative.

Finally, the appellants insist upon reversionary rights based on the language of the habendum clause in the 1830 deed, "To have and to hold the said lands and premises to the said The Morris Canal and Banking Company, their successors and assigns, so long as the same shall be used for the purposes for which the Morris Canal and Banking Company have power to use the same by the true intent and meaning of the said Act."

One answer is that the Court of Errors and Appeals of New Jersey has ruled, in Sellick v. Jersey Central Power & Light Co., 1940, 124 N.J.L. 110, 112, 11 A.2d 137, 138, that "where there is a conflict between the granting clause and the habendum clause the former will prevail. See Havens v. Sea-shore Land Co., 47 N.J. Eq. 365, 20 A. 497; Baum v. Canter, 102 N.J.Eq. 193, 140 A. 226." However, a

---

[3] Although there may be some doubt as to whether the Canal Company had actually constructed anything upon the lands at the time of the 1830 deed, the reference there being "the said Canal is laid across certain lands", it must certainly have done so by the time of the 1833 deed, where the reference is "being the land covered by the weigh lock."

lower court, in Trenton Potteries Co. v. Blackwell, 1945, 137 N.J.Eq. 113, 43 A.2d 831, without a consideration of the Sellick case, has uttered dicta indicating that a more modern rule might be applied.

A more dispositive answer, in our opinion, is to be found in the case of Graf v. City of Newark, 124 N.J.L. 312, 11 A.2d 764, affirmed 129 N.J.L. 96, 28 A.2d 118, on the opinion of the lower court, cert. denied 318 U.S. 790, 63 S.Ct. 994, 87 L.Ed. 1157. The deed involved in that case was substantially the same as that here in controversy, with the exception of the description of the subject matter. There too, rights of reverter were sought to be established on the double argument that the chartering act limited the Canal Company to use of the property for navigation only and that the deed conveyed only an estate upon a conditional limitation. The Court said, at pages 315, 316 of 124 N.J.L., at page 766 of 11 A.2d, in reply to the first contention:

"* * * Section 25 of the act under which the canal was created, P.L. 1824, supra, clearly provided that the canal was to be a public highway. It said 'The said canal when completed shall forever thereafter be esteemed a public highway, free for the transportation of any goods, commodities or produce whatsoever, on payment of the toll,' etc., P.L. 1924, p. 506, N.J. S.A. 13:12-13, authorized the Canal Company 'to discontinue the use as a means of transportation by water' of the canal and further provided that the property 'shall be applied and are hereby dedicated * * * to the public use as public highways for the transportation and passage thereon of persons and property and for any and all further purposes of public highways.'

"The Court of Errors and Appeals held in Barnett v. Johnson, 15 N.J.Eq. 481, that the canal was a public highway both by express legislative enactment and also by its intrinsic nature and that the exaction of tolls made it none the less a public highway. To the same effect is Morris Canal & Banking Co. v. Fagan, 18 N.J.Eq. 215. The late Vice Chancellor Backes said in 1929 in Gill v. Ferrone (unreported in dealing with the effect on property rights of the

abandonment of this canal that 'The abandonment of one use of a public highway for another consistent use does not work a reversion to the owner from whom it was taken by condemnation' citing in support cases from Kentucky, Ohio and New York. We think the same principle applies when for full value the whole title was acquired whether the acquisition was by condemnation or by purchase as in the instant case. Strock v. East Orange, 80 N.J.L. 619, 77 A. 1051; Carroll v. Newark, 108 N.J.L. 323, 158 A. 458, 79 A.L.R. 509.

The Court continued with its reply to the second argument, which also is advanced here, saying, at page 316 of 124 N.J.L., at page 766 of 11 A.2d: "It is next argued by the realtors that the said Shipman et al. conveyance in question to the Canal Company conveyed an estate upon conditional limitation, which terminated upon the abandonment of the canal. We think there is no merit to this point because, as we have said, the property of the canal was for public highways and the conveyance in question was for the use of the land 'so long as the same shall be used for the purposes for which the Morris Canal and Banking Co. have power to use the same by the true intent and meaning of the said Act.' Moreover not only did the canal company have authority, as above shown, by its charter to use the canal as a public highway but other acts of the legislature, those relating to the abandonment and the disposition of its property, clearly recognized it as a public highway. These legislative enactments are in effect amendments to the charter of the canal company and are in pari materia and should be construed together as a whole. Certainly the abandonment of the canal as such does not raise any presumption that the state relinquished its rights in the property. McCarter v. Lehigh Valley Railroad Co., 78 N.J.Eq. 346, at page 360, 79 A. 93."

The conclusion of the Court was: "It is our view that there has been no change in the use of the land as a public highway, that there was no reversion and that the city as successor in title to the canal Company acquired a good and valid title from the state. For these reasons the rule to show cause is discharged, with costs."

The appellants have nevertheless attacked the validity of the Graf decision, which contains a complete solution to the problems herein raised. In that case we have a New Jersey court construing a New Jersey statute, and a deed in all material respects identical to that in suit. That we must follow that decision is by this time axiomatic. Erie R.R. Co. v. Tompkins, 1938 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We need only add that we find nothing in the New Jersey law which would afford confidence in a contrary decision here on the ground that the Graf decision would not now be followed in New Jersey. The difference in the procedure involved in that case and the instant case is without significance.

Appellants further seek to impugn the Graf decision on the constitutional grounds, deprivation of property without due process of law and impairment of the obligation of an existing contract. The Court in the Graf case, however, merely construed and applied the Act of 1824 and interpreted the language of the deed. Insofar as it applied the Act of 1924 in pari materia, that was merely an additional basis for the decision emphasizing that the public use of the property had never been relinquished, but on the contrary was recognized and preserved.

For the reasons stated, it is the opinion of this Court that the decision of the learned court below should be affirmed.